[Cite as *State v. Weeks*, 2021-Ohio-3735.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellant, | : | Nos. 110195 and 110196 |
| v. | : | |
| MYRON WEEKS, JR., | : | |
| Defendant-Appellee. | : | |

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** VACATED AND REMANDED
**RELEASED AND JOURNALIZED:** October 21, 2021

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-19-637358-A and CR-19-639880-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Frank Romeo Zeleznikar, Assistant Prosecuting Attorney, *for appellant.*

Cullen Sweeney, Cuyahoga County Public Defender, and Francis Cavallo, Assistant Public Defender, *for appellee.*

FRANK D. CELEBREZZE, JR., J.:

{¶ 1} Plaintiff-appellant, the state of Ohio, brings this appeal challenging the trial court's judgment terminating, sua sponte, defendant-appellee Myron Weeks, Jr. from community control. The state argues that the trial court erred by failing to

make the findings required by R.C. 2929.15(C), and failing to provide either party with notice or an opportunity to be heard on the issue of termination. After a thorough review of the record and law, this court vacates the trial court's judgment, reinstates Weeks's community control sanction, and remands the matter to the trial court for further proceedings consistent with this opinion.

## I. Factual and Procedural History

{¶ 2} On August 22, 2019, Weeks pled guilty in two criminal cases. First, in Cuyahoga C.P. No. CR-19-637358-A, Weeks pled guilty to having weapons while under disability and obstructing official business. Second, in Cuyahoga C.P. No. CR-19-639880-A, Weeks pled guilty to attempted burglary, having weapons while under disability, and tampering with evidence.

{¶ 3} The trial court held a sentencing hearing on September 26, 2019. The trial court sentenced Weeks to two years of community control sanctions under the supervision of the probation department's "mental health/developmental disabilities unit."

{¶ 4} On February 3, 2020, a capias was issued at the request of the probation department. The trial court held a hearing on February 20, 2020. A representative of the probation department advised the trial court that the probation department had not seen Weeks since December 4, 2019. The representative acknowledged, however, that Weeks called the probation department on December 10, 2019, and reported that he had been shot and was recovering from his gunshot wounds. (Tr. 36.) The representative also asserted that Weeks called the probation

department the following week, as he was instructed to do.  After this conversation, the state "lost track of him."  Weeks's case manager was able to get in contact with Weeks, but Weeks did not come into the probation department or report to Murtis Taylor, leading to the capias being issued.

{¶ 5} The representative advised the trial court that Weeks spoke with the state the week before the February 20, 2020 hearing, Weeks was at Murtis Taylor the day before the hearing, and Weeks completed an outpatient treatment assessment.  Weeks was scheduled to start his outpatient treatment program the following week.  Finally, the representative advised the trial court that Weeks had a "psych appointment" scheduled on March 4, 2020, and that the state "want[s] him to go to [the appointment] and continue to be compliant with psychiatric appointments as well as the [outpatient] treatment."  (Tr. 37.)

{¶ 6} Weeks's counsel addressed the trial court and confirmed that Weeks would be starting his intensive outpatient ("IOP") treatment program the following week.  In addition to the IOP treatment, Weeks planned to attend two alcoholics anonymous ("AA") meetings per week.  Weeks's counsel advised the court that Weeks had documentation related to his gunshot wounds, which "did take [Weeks] out of commission for quite a while."  (Tr. 38.)  Weeks's counsel asserted that Weeks was back on track and requested that he be continued on community control.

{¶ 7} The trial court addressed Weeks during the hearing and inquired about the nature of the gunshot wounds and the circumstances under which Weeks sustained them.  The trial court stated,

Sounds like we're getting back on a good path here. I'm really sorry to hear about you getting shot, that's horrible. I can't imagine. I hope they can get [the bullet] out of there. The only issue that really seems to be an issue is some marijuana. I'm sure you can handle that and you'll take care of that problem, okay?

So the plan that's set up sounds good, so let's go with that plan, keep things going. You're supposed to be with me for a long time yet,[1] but, you know, if things go well — I think I told you this, Myron, at the [September 26, 2019] sentencing — you start doing really well, maybe in a year, 18 months we can finish your probation early. I'd like that to happen. I'm, sure you would too, all right?

So be an angel, do the stuff we ask you to do, and we'll be all set, okay?

(Tr. 40-41.)

{¶ 8} Following the February 20, 2020 hearing, the trial court recalled the capias and continued Weeks on community control. The trial court's judgment entry was journalized on February 24, 2020.

{¶ 9} On December 12, 2020, the trial court, sua sponte, terminated Week's community control and waived costs and supervision fees. On December 29, 2020, the state filed (1) motions for leave to file appeals, and (2) appeals challenging the trial court's judgments terminating Weeks's community control (8th Dist. Cuyahoga Nos. 110195 and 110196). On January 7, 2021, the state filed a motion to consolidate the two appeals. This court granted the state's motion for leave and motion to consolidate on February 2, 2021. This court consolidated the state's two appeals for purposes of briefing, hearing, and disposition.

---

[1] The hearing took place on February 20, 2020, and Weeks's two-year term of community control was not set to expire until September 2021.

{¶ 10} In challenging the trial court's judgments terminating Weeks's community control, the state assigns two errors for review:

> I.  The trial court erred when it sua sponte terminated [Weeks] from community control early without making the requisite findings under [R.C. 2929.15(C)].

> II.  The trial court erred when it sua sponte terminated [Weeks] from community control early without providing notice, or an opportunity to be heard, to either party.

## II. Law and Analysis

### A. Termination of Community Control

{¶ 11} Both of the state's assignments of error pertain to the trial court's December 12, 2020 judgment entries terminating Weeks from community control.

> The Ohio Supreme Court has repeatedly recognized that "'trial courts lack authority to reconsider their own valid final judgments in criminal cases.'" [*State v. Raber*], 134 Ohio St.3d 350, 2012-Ohio-5636, 982 N.E.2d 684, ¶ 20, citing *State ex rel. White v. Junkin*, 80 Ohio St.3d 335, 338, 686 N.E.2d 267 (1997).  Indeed, "absent statutory authority, a trial court is generally not empowered to modify a criminal sentence by reconsidering its own final judgment." *State v. Carlisle*, 131 Ohio St.3d 127, 2011-Ohio-6553, 961 N.E.2d 671, ¶ 1.

*State v. Ray*, 8th Dist. Cuyahoga No. 101142, 2014-Ohio-4689, ¶ 8.

{¶ 12} R.C. 2929.15(C) authorizes a trial court to modify a community residential sanction (R.C. 2929.16), a nonresidential sanction (R.C. 2929.17), or a financial sanction (R.C. 2929.18).  R.C. 2929.15 provides, in relevant part,

> (C) If an offender, for a significant period of time, fulfills the conditions of a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code in an exemplary manner, the court may reduce the period of time under the sanction or impose a less restrictive sanction, but the court shall not permit the offender to violate any law or permit the offender to leave the state without the permission of the court or the offender's probation officer.

**{¶ 13}** "Trial courts lack any statutory authority to terminate community control outside the statutory framework provided in R.C. 2929.15(C)." *State v. Ogle*, 4th Dist. Hocking No. 16CA22, 2017-Ohio-869, ¶ 10, citing *State v. Castillo*, 2d Dist. Montgomery No. 24022, 2011-Ohio-1821 (a trial court has no power to modify a sentence or terminate community control except under R.C. 2929.15(C) where the offender, "for a significant period of time, fulfills the conditions of a sanction in an exemplary manner").

**{¶ 14}** Our resolution of the state's second assignment of error is dispositive of this appeal, and we need not address the state's first assignment of error.

## 1. Notice

**{¶ 15}** In its second assignment of error, the state argues that the trial court erred in terminating Weeks from community control without holding a hearing, providing notice to either party, or providing either party with an opportunity to be heard. As a result, the state contends that neither party had an opportunity to address the "significant period of time" and "exemplary manner" factors set forth in R.C. 2929.15(C).

**{¶ 16}** The state directs this court to *State v. Heinz*, 146 Ohio St.3d 374, 2016-Ohio-2814, 56 N.E.3d 965. In *Heinz*, the Ohio Supreme Court held that the state is entitled to notice and an opportunity to be heard in community control violation hearings:

> The prosecuting attorney has the authority to prosecute all complaints, suits, and controversies in which the state is a party, and because the state is a party to community control violation proceedings, because it

has the burden of proving that a violation occurred, because it maintains an interest in ensuring that the proper sentence is imposed to punish and rehabilitate the offender while protecting the safety of the public, and because it is responsible for preserving error for appeal, the state, through the prosecuting attorney, is entitled to notice and an opportunity to be heard in all such hearings.

*Id.* at ¶ 2. The *Heinz* Court explained, "[b]ecause the state is a party to all community control violation proceedings, the prosecuting attorney is the state's legal representative in those proceedings pursuant to R.C. 309.08(A) and is therefore entitled to proper notice and an opportunity to be heard at all community control violation proceedings." *Id.* at ¶ 21.

{¶ 17} R.C. 309.08(A), governing a prosecuting attorney's powers and duties, provides, in relevant part, "[t]he prosecuting attorney shall prosecute, on behalf of the state, all complaints, suits, *and controversies* in which the state is a party." (Emphasis added.) *See State v. Young*, 154 Ohio App.3d 609, 2003-Ohio-4501, 798 N.E.2d 629, ¶ 7 (3d Dist.) (although community control sanction violations are not necessarily considered criminal proceedings, R.C. 309.08 does not limit a prosecuting attorney's duties to "purely criminal proceedings," and empowers prosecutors to prosecute on behalf of the state, "*all* complaints, suits, and *controversies* in which the state is a party[.]"). (Emphasis sic.) The *Heinz* Court explained that the prosecuting attorney "has an interest in ensuring that a proper sentence is imposed to punish and rehabilitate the offender while protecting the public[.]" *Id.* at ¶ 19.

{¶ 18} In the instant matter, Weeks concedes that the state was not provided notice of the trial court's sua sponte termination of Weeks's community control. During oral arguments, Weeks's counsel acknowledged that it was inappropriate for the trial court to terminate Weeks's community control without notifying either party.

{¶ 19} Although this appeal involves the early termination of Weeks's community control rather than community control violation proceedings, we find no distinction between this case and *Heinz*, 146 Ohio St.3d 374, 2016-Ohio-2814, 56 N.E.3d 965. Based on the *Heinz* rationale, which mandates notice, and the manner in which the trial court terminated Weeks's community control, we find that the trial court abused its discretion in terminating Weeks's community control early without providing notice or an opportunity to be heard to either party.

{¶ 20} The trial court terminated Weeks's community control sua sponte, without a hearing, and without providing the parties with notice and an opportunity to be heard. As a result, the prosecuting attorney was unable to adequately represent the interests of the state by ensuring that Weeks had been properly punished and rehabilitated while protecting the safety of the public. The state was also denied an opportunity to preserve the record and assert objections to Weeks's early termination for appellate purposes. *See Heinz* at ¶ 2, 20 (the state, through the prosecuting attorney, is responsible for preserving error for appeal).

{¶ 21} Had the trial court terminated community control upon a motion filed by Weeks, the state would have had, at a minimum, an opportunity to file a brief in

opposition in which it could have addressed the R.C. 2929.15(C) factors and argued that Weeks was not eligible for early termination. This was not the case because Weeks did not file a motion to terminate, and the trial court terminated community control sua sponte, without providing either party with notice.

{¶ 22} Following the February 20, 2020 hearing on the capias, there is no indication in the record that Weeks violated community control or that any issues related to Weeks's community control sanction were brought to the attention of the trial court. The state argues that the only reason that the record is silent with respect to any issues that arose with Weeks's community control after February 2020 was because the trial court did not provide the state or the probation department with an opportunity to present this information before the trial court terminated Weeks early from community control. As a result, the state maintains that the trial court did not have all of the facts and information in front of it when it terminated Weeks's community control. Had the trial court provided notice to the state prior to terminating Weeks's community control, as required by *Heinz*, 146 Ohio St.3d 374, 2016-Ohio-2814, 56 N.E.3d 965, the issue of Weeks's compliance with the terms of his community control could have been further developed in the record.

{¶ 23} For all of the foregoing reasons, we find that the trial court abused its discretion in terminating Weeks's community control without providing the state with notice or an opportunity to be heard.

**{¶ 24}** The state's second assignment of error is sustained. Based on our resolution of the state's second assignment of error, the state's first assignment of error is moot.

**{¶ 25}** The trial court's judgment terminating Weeks's community control sanction is vacated, Weeks's community control sanction is reinstated, and the matter is remanded to the trial court for further proceedings consistent with this opinion.

**{¶ 26}** Judgment vacated and remanded.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
FRANK D. CELEBREZZE, JR., JUDGE

SEAN C. GALLAGHER, P.J., and
EMANUELLA D. GROVES, J., CONCUR